Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 6320 | DATE | 10/17/2002 |
| CASE TITLE | Johnson vs. Beecher Community Schools | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  For the reasons set forth on the attached Memorandum Opinion and Order, defendants' motion for summary judgment (8-1) is granted, and their requests to strike is denied as moot. Judgment is entered in favor of defendants. The trial date of 1/6/03 is vacated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | number of notices |
| | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | OCT 21 2002 date docketed |
| ✓ | Docketing to mail notices. | |
| ✓ | Mail AO 450 form. | docketing deputy initials |
| | Copy to judge/magistrate judge. | |
| OR | courtroom deputy's initials | date mailed notice |
| | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHRISTINE JOHNSON, )
)
Plaintiff, )
)
vs. )
) Case No. 01 C 6320
)
BEECHER COMMUNITY SCHOOLS )
AND RAYMOND J. LAPORTE, )
SUPERINTENDENT, )
)
Defendant. )

DOCKETED
OCT 2 1 2002

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Christine Johnson brought this lawsuit against her employer, the Beecher School District, and Raymond LaPorte, the School District's superintendent. Johnson alleges that the defendants violated her First Amendment rights to free speech and free assembly by retaliating against her for union-related activity. Defendants have moved for summary judgment and have also asked this Court to strike certain parts of Johnson's affidavit and Statement of Additional Facts. For the reasons discussed below, defendants' motion for summary judgment is granted, and their request to strike is denied as moot.

## FACTS

Since the fall of 1987, Johnson has been employed as a bus driver by defendant Beecher School District in Will County, Illinois. Johnson's bus driving duties include driving high school students to a career center in the morning, driving kindergartners home from school at noon, and

1

driving an afternoon route. Johnson drove a kindergarten route for both school semesters every year except one until the events surrounding this lawsuit.

Sometime in the spring of 2000, an annual survey was distributed to the Beecher bus drivers, soliciting their interest in the various bus routes available. Four drivers indicated an interest in driving a kindergarten route: Johnson, Ellen Julius, Jenola Morgan, and Donald Stadt. On August 21, 2000, LaPorte conducted a meeting regarding the upcoming school year with all the bus drivers and support staff. At that meeting, among other things, LaPorte announced that the bus drivers of Crete-Monee, a neighboring school district, were on strike. According to the minutes of that meeting and LaPorte's testimony, LaPorte indicated that Crete was looking for replacement drivers during the strike and would be holding a meeting for drivers interested in helping. He also stated that Beecher drivers would have his permission to assist Crete, so long as any assistance did not interfere with their Beecher duties. Heldt Dep. at 12; LaPorte Dep. at 14; LaPorte Dep. Ex. 2 at 1. Johnson does not recall these announcements, Johnson Aff. at 10-11, but is adamant that on August 21 LaPorte did not specifically inquire whether any of the Beecher drivers would be interested in driving for Crete. Pl.'s Resp. to Defs.' Local Rule 56.1(a)(3) Statement of Facts ¶¶ 18-20. The parties agree that no other discussion relative to the Crete strike took place between Johnson and any school official on August 21. *Id.* ¶ 20.

On August 23, 2000, Marla Heldt, the Beecher School District's business manager, held a meeting with Johnson, Morgan, and Stadt. The purpose of this meeting was to determine the number of kindergarten routes that would be necessary for the 2000-2001 school year. Pl.'s Resp. to Defs.' Local Rule 56.1(a)(3) Statement of Facts ¶ 9. Using a student list and a map, the kindergartners' addresses where mapped out, and it was decided that two kindergarten routes

2

would be necessary.

The parties have differing versions of what happened next. The defendants claim that once two routes were deemed necessary, Heldt announced that Morgan and Stadt would drive the kindergarten route in the fall semester and that Johnson and Julius would drive it in the spring. Heldt Dep. at 23; Morgan Aff. ¶ 4. At the conclusion of the meeting, but while the drivers were still present, LaPorte arrived. Heldt Dep. at 21; LaPorte Dep. at 18; Morgan Aff. ¶ 4. He asked the drivers if any of them planned to attend the Crete meeting. Heldt Dep. at 22; LaPorte Dep. at 22; Morgan Aff. ¶ 4. Stadt and Morgan replied that they probably would. Heldt Dep. at 22; LaPorte Dep. at 22-23. Johnson replied, "No. There's no way I'm doing that." Defs.'s Statement of Material Facts ¶ 22. Defendants maintain that Johnson said nothing more on the subject, offering no reason or explanation for not attending the meeting. *Id.* ¶ 23.

Johnson's version of the August 23 meeting is quite different. According to her, LaPorte arrived only a few minutes after the meeting began and was present during most of it. Johnson Dep. at 14. After the drivers decided that only two kindergarten routes would be needed, LaPorte broached the subject of the Crete drivers strike. He asked the drivers if any of them was willing to drive for Crete, *id.* at 19, and then looked to each driver individually for a response. Pl.'s Resp. to Defs.' Local Rule 56.1(a)(3) Statement of Facts ¶ 22. Though the other two drivers indicated some interest in doing so, Johnson replied, "No. There's no way I'm doing that." Johnson Dep. at 20. She did not, however, explain why she did not want to drive. *Id.* at 24. Approximately two minutes later, LaPorte himself announced the kindergarten route assignments. *Id.* at 22. Although Johnson had always driven two semesters of the kindergarten route, she was told that for the 2000-2001 school year she would split that route with Morgan,

3

with each driving it for one semester. The claimed proximity between her refusal to drive for Crete and LaPorte's announcement fuels Johnson's claim that LaPorte retaliated against her for her pro-union sentiments. *Id.* at 47.[1]

The defendants contend that the decision to split the kindergarten routes had been contemplated prior to Johnson's refusal to drive for Crete. They say that on the morning of August 23, before the meeting with the kindergarten drivers, LaPorte and Heldt met to discuss the kindergarten routes. Heldt Dep. at 14; LaPorte Dep. at 20. Based on the driver preference surveys, Heldt informed LaPorte that four drivers were interested in the kindergarten route. They agreed that if the drivers determined that three kindergarten routes were necessary, they would assign three drivers and one substitute. Heldt Dep. at 14-15; La Porte Dep. at 20. If only two routes were needed, however, each of the four interested drivers would drive one semester of a kindergarten route. *Id.* Although only two routes had been needed in recent history, Heldt and LaPorte anticipated a possible need for three routes because of the geographic spread of kindergartners within the district in 2000-2001. Heldt Aff. ¶ 5.

Johnson implies that this account is disingenuous. To bolster her claim that the route reassignment was retaliatory, Johnson points to several incidents that demonstrate her union support and that span the course of her employment at Beecher. She contends that these incidents establish that LaPorte and the Beecher administration were aware of her pro-union sentiments. Defendants have asked this Court to strike the portions of Johnson's affidavit and Statement of Additional Facts that detail these activities – all occurring before August 2000 – as being replete with inadmissible evidence. *See* Fed. R. Civ. P. 56(e) (stating that affidavits

---

[1] We note as an aside that ultimately none of the Beecher drivers actually drove for Crete.

opposing summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein"). Defendants state that these events are inadmissible because they are speculative and conclusory, irrelevant, and too remote in time to be probative on the issue of the alleged retaliation. Because, as discussed below, a full consideration of Johnson's submissions does not alter our disposition of this motion, defendants' request to strike is denied as moot.

The earlier pro-union incidents cited by Johnson are the following: Johnson claims that in 1996 and 1997 Heldt helped her draft and print letters to union officials on behalf of Johnson's husband, a Chicago public school teacher. Johnson also claims that she told Heldt about her husband's employment grievances and about the assistance he had received from his union. In 1997 or 1998, Johnson submits, she had conversations with other Beecher drivers regarding union related issues, such as picking a day for all drivers to have "blue flu." Johnson Dep. at 38-39. Although she admits that these conversations did not take place in the presence of LaPorte or of any other District official, she claims that LaPorte learned about them from the District's chief mechanic, Anthony Wilkas. Johnson submits that because Wilkas had frequent conversations with LaPorte, it is reasonable to infer that Wilkas informed LaPorte of Johnson's pro-union sentiments. Pl.'s Resp. to Defs.' Mot. to Strike Portions of Pl.'s Statement of Additional Facts & Aff. ¶¶ 8-9. Johnson also submits that in 1996 and 1997 she had numerous conversations with Wilkas regarding unions. Johnson Dep. at 41; Johnson Aff. ¶ 7. Although she has no independent knowledge of Wilkas's reporting such conversations to LaPorte, she assumes that he did. Johnson Dep. at 42. Wilkas denies having any union conversations with Johnson, Wilkas

Dep. at 8, and testified that his conversations with LaPorte related merely to the District's buses and their upkeep, *id.* at 27.

Johnson also states that "[s]everal years ago" she served as a Democratic election judge for her township. Pl.'s Mem. of Law at 2. At that time, she asked LaPorte whether Beecher paid its employees while they were off work for jury duty or for election judge service. She informed him that the union for the Chicago School District had negotiated a contract whereby Chicago employees received paid leave to fulfill these functions. Johnson does not remember LaPorte's response but recalls from his expression that he thought she was joking. She infers that this response evinces his animosity towards unions. Pl.'s Resp. to Defs.' Mot. to Strike ¶6.

## DISCUSSION

Summary judgment is proper only if the affidavits and other evidentiary materials submitted by the parties show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The Supreme Court has stated that Rule 56(c) mandates the entry of summary judgment when, "after adequate time for discovery," the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). Even when certain facts are genuinely disputed, a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

This Court must therefore determine whether, having had an opportunity for discovery, Johnson can establish the essential elements of her claim. If she cannot, she has raised no genuine issue of material fact for trial, and defendants are entitled to summary judgment. The plaintiff in a First Amendment retaliation case must prove that her conduct was constitutionally protected and that such conduct was the substantial or motivating factor in the allegedly retaliatory employment decision. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Stagman v. Ryan*, 176 F.3d 986, 999 (7th Cir. 1999). Defendants allege that they are entitled to summary judgment because of Johnson's inability to establish either part of the test for retaliation.

### A. Constitutionally Protected Speech

The threshold question in assessing whether speech is constitutionally protected is "whether it addressed a matter of public concern." *Button v. Kibby-Brown*, 146 F.3d 526, 529 (7th Cir. 1998) (citing *Connick v. Myers*, 461 U.S. 138, 146 (1983)). Defendants argue that Johnson cannot make this showing. They claim that her statement, "There's no way I'm doing that," did not invoke the protections of the First and Fourteenth Amendments because it expressed a matter of purely personal interest. *Cf. Connick*, 461 U.S. at 147 ("[W]hen a public employee speaks . . . as an employee upon matters only of personal interest, . . . a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior."). Because Johnson simply expressed her refusal to drive for Crete without providing her reasons for doing so, defendants argue that her refusal implicated purely personal motives, not a desire to air the merits of an issue. *Cf. Button*, 146 F.3d at 530 ("Where considerations of content, form, and context suggest

that an employee raised a topic of societal interest for 'personal reasons rather than a desire to air the merits of the issue,'... the speech is not entitled to First Amendment protection.") (quoting *Smith v. Fruin*, 28 F.3d 646, 652 (7th Cir. 1994)). Because, however, we can decide this motion based on the motivating factor issue alone, we do not need to decide whether Johnson's statement implicated a matter of public concern. We assume for present purposes that her speech was constitutionally protected and turn to a consideration of whether such conduct was the substantial or motivating factor for the alleged retaliation.

### B. Substantial or Motivating Factor

The court's role in evaluating a retaliation claim is "not to second-guess the employer's decision, but to determine whether the employer's substantial or motivating factor in [an employment decision] was the plaintiff's protected conduct." *Stagman v. Ryan*, 176 F.3d 986, 1002 (7th Cir. 1999). To survive this motion, Johnson must present evidence establishing that "'but for' [her] protected activities" she would have been assigned a kindergarten route for both semesters, as she had in the past. *Id.* at 1003.

Johnson's problem is that both LaPorte and Heldt's sworn testimony establishes that the route-splitting had been contemplated before Johnson made known her refusal to drive for Crete. If the decision to allocate the kindergarten routes equally among the interested drivers if only two routes were required occurred before Johnson expressed her support for the striking Crete drivers, then her refusal to drive for Crete cannot have been defendants' substantial or motivating factor for the reassignment.

In defending a motion for summary judgment, the nonmovant may not "rest upon the mere allegations or denials of the adverse party's pleadings, but the [nonmovant's] response . . .

must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In this case, the Rule requires Johnson to offer "specific facts" that would tend to refute the defendants' submissions that the reassignment decision was made before Johnson refused to drive for Crete. *Anderson*, 477 U.S. at 250.

Johnson makes two attempts to discredit LaPorte and Heldt's account of the decision's timing. First, she states that she "believes" that had the decision truly been made prior to her refusal to drive for Crete, LaPorte would have "discussed this matter with her because she had had this route for such a long time and she was a very safe, veteran driver." Pl.'s Mem. of Law at 6. She asks this Court to infer that if the decision had been made as LaPorte and Heldt claim, then LaPorte would have informed Johnson personally and consulted her about the change in driving duties. But this is nothing but speculation, which is insufficient to controvert LaPorte and Heldt's testimony regarding the sequence of events.

Second, Johnson implies that the decision could not have been made before the drivers' meeting because, for as long as she can remember, only two kindergarten routes had been needed and there was no reason to contemplate three. *Id.* at 5. She claims that there is no evidence that the District's "needs concerning drivers [were] any different for the 2000-2001 school year than they were for the 1999-2000 school year." *Id.* Yet she herself offers no evidence, no "specific facts," to refute the defendants' contention that the geographic spread of kindergartners in 2000-2001 suggested the possibility of a third route that year.

Johnson's submissions are insufficient to refute LaPorte and Heldt's sworn account. Though a cogent argument that another party's testimony is illogical, unsupported, or otherwise not worthy of credence may be sufficient to establish a genuine issue of fact, Johnson has

9

presented no such argument. Rather, she has offered only her own unsupported belief. But unsupported personal belief is no substitute for evidence. Because she has offered no evidence, beyond conjecture, that events occurred other than LaPorte and Heldt describe, we must assume that in the discovery process she has uncovered none. Without supporting evidence, Johnson's speculations and conclusory statements are insufficient to establish the existence of a genuine issue of fact as to whether her protected conduct was a substantial or motivating factor in the alleged retaliation. Although her speculations arguably cast a shadow on the defendants' version, some "metaphysical doubt as to the material facts," is insufficient to defeat summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In the absence of any actual evidence to contradict the defendants' account, Johnson has failed to establish that her refusal was a substantial or motivating factor for the reassignment – an essential element of her claim and one on which she bears the burden of proof. Johnson has therefore not raised any genuine issue of material fact, and summary judgment for defendants is appropriate. *Celotex*, 477 U.S. at 323.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment [docket item # 8-1] is granted, and their request to strike is denied as moot. The Clerk is directed to enter judgment in favor of defendants. The trial date of January 6, 2003, is vacated.

MATTHEW F. KENNELLY
United States District Judge

Date: October 17, 2002